IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

BARBARA  MOHON,

                Plaintiff,

v.                                                        case no.  _____

JOHN C. SPILLER II,  JACOB A. MEARS,
MICHAEL THERON SMITH JR.   and
SCOTT  PERRY  SHAPIRO,

                Defendants.

## COMPLAINT  FOR VIOLATIONS OF THE UNFAIR PRACTICES ACT and  THE TELEPHONE CONSUMER PROTECTION ACT

TO THE HONORABLE COURT:

1.      Plaintiff Barbara Mohon ("Plaintiff") is a real person who may be contacted through her undersigned attorney.

2.      Plaintiff brings this action in accordance with the anti-harrassment provisions of the New Mexico Unfair Practices Act ("the UPA") and the federal Telephone Consumer Protection Act ("the TCPA").

3.       The UPA is intended to protect consumer privacy by prohibiting certain unsolicited, autodialed and pre-recorded message telemarketing calls, and to provide for transparency by requiring that telemarketers identify themselves and who they are calling for during the calls.   The TCPA is of similar design.

1

4.     The TCPA and the FTC's Telemarketing Sales Rule ("the TSR") established the National Do-Not-Call Registry ("the Registry").   The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations.   *See* www.donotcall.gov

5.     Telemarketers are required by law to subscribe to and comply with the Registry.   NMSA § 57-12-22(C);   47 U.S.C. § 227(C)(3)(F-G);   16 C.F.R. Part 310;   47 C.F.R. § 64.1200(c).

6.     The UPA and the TCPA each established private rights of action to recover statutory damages for unlawful telephone solicitations and for violations of the Registry's  implementing regulations.**1**

### Venue and Jurisdiction

7.     Plaintiff and her telephone were in the State of New Mexico at the time of the illegal telemarketing the subject of this Complaint that Defendants and/or their agents harassed her with. Plaintiff resides in Santa Fe County.   Venue is proper.

8.     This Court has subject matter jurisdiction based on a federal question and supplemental jurisdiction over state law claims pursuant to 28 USC §§ 1331 and 1367.

9.     In 2018 and 2019 Defendants did business within New Mexico because Defendants or their agents regularly, repeatedly robocalled the phones of New Mexicans located within New Mexico for the purpose of advertising consumer products and services they falsely claimed were "health

---

1.   The FCC has defined "robocalls" as "calls that require consumer consent",  including "calls made either with an automatic telephone dialing system ("autodialer") or with a prerecorded or artificial voice".   *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order released on 7/10/15, 30 FCC Rcd. 7961 ("FCC 15-72"), footnote 1.

insurance".  Defendants authorized, approved and controlled robocall telemarketing to sell their sham products and services throughout the State of New Mexico.  By directing telemarketing phone calls into the forum state, Defendants made themselves subject to the  specific  personal jurisdiction of the courts of the forum state.

### the Defendants and their abusive robocalling conspiracy

10.     **Exhibit 1** to this Complaint is a true copy of the FCC's March 2021 Forfeiture Order in its file no. EB-TCD-18-00027781 ("the FCC-Order").    Defendants John C. Spiller and Jacob A. Mears ("Spiller", "Mears", or collectively "Defendants") are the real persons the subject of the FCC-Order.    Spiller and Mears reside in Travis or Harris County, Texas.

11.     **Exhibit 2** to this Complaint is Doc. 56 filed on 10/30/20 in case no. 4:20-cv-2021 pending in the Southern District of Texas's Houston Division ("the Texas lawsuit").   Defendants Michael Theron Smith Jr. and Scott Perry Shapiro ("Smith", "Shapiro", or collectively "Defendants") are the real persons the subject of the Texas lawsuit.   Smith and Shapiro reside in Florida.

12.     The FCC's allegations, statements and findings of fact set forth in the FCC-Order, are true and are incorporated herein by reference.

13.     Paragraphs 72 and 73 of the Texas lawsuit are true statements of fact and are incorporated herein by reference.   Defendants' abusive robocalls were also extensively directed into the State of New Mexico, and began to harrass Plaintiff **almost daily at times**  starting in June 2018 and continuing through well into the year 2019.

14.     All the Defendants named herein used sham entities that they dominated and controlled as their alter egos, to unjustly attempt to avoid personal liability for their behavior the subject of this Complaint.

15.     Paragraph 89 of the Texas lawsuit is a true statement of fact incorporated herein by reference.

16.     Paragraphs 90 through 102 of the Texas lawsuit are true statements of fact incorporated herein by reference.   Smith and Shapiro regularly supplied Spiller and Mears with lead-lists consisting of millions of phone numbers for Spiller and Mears to harrass on behalf of Smith and Shapiro.   Smith and Shapiro knew the lead-lists they used and provided consisted of do-not-call registered phone numbers of consumers who had never given prior express written consent for Defendants' robocalls.   One of the reasons they knew is that, based on the sheer numbers of phone numbers on their lead-lists, they knew that they could not possibly have avoided calling do-not-call registered phone numbers.

17.     Paragraphs 153 through 167 of the Texas lawsuit are true statements of fact incorporated herein by reference.   Smith and Shapiro also directed Spiller and Mears to send their robocalls into the State of New Mexico including to Plaintiff.

18.     Defendants were at all times well-aware of the rules, laws, regulations and requirements adopted and implemented by the TCPA, the TSR and complementary state-laws like the UPA, but they willfully chose to disregard these rules, regulations and laws for purposes of their own financial gain.   Smith and Shapiro have operated and controlled call-centers for many years.

19.     **Exhibit 3** hereto in support of this Complaint is a true copy of Spiller's Declaration filed as Doc. 178-6 on 10/31/19 in the Bilek case no. 18-cv-3083 pending in the Northern District of Illinois ("the Bilek Declaration").

20.     **Exhibit 4** hereto in support of this Complaint is a true copy of Spiller's Declaration filed as Doc. 93-3 on 9/26/19 in the Abramson case no. 18-cv-615 in the Western District of Pennsylvania ("the Abramson Declaration").

21.     In the Bilek Declaration, Spiller accurately describes the pre-recorded message robocall Defendants repeatedly harrassed Plaintiff with in 2018 and 2019.

22.     Spiller's Declarations generally accurately describe some of the functionings of Defendants' out-of-control robodialing conspiracy but with a few inaccuracies.  For example, paragraph 8 of the Abramson Declaration is false:   Defendants did not provide consumers any "button-press option"  that would stop the calls, and Defendants did not bother to maintain any internal do-not-call lists of consumers who had complained about the calls.


**The Illegal Phone Calls to Plaintiff  Defendants are Responsible For**

23.     Plaintiff's telephone is a wireless cell phone assigned the number 505-501-3610.

24.     Starting in June 2018 and continuing well into the year 2019 Defendants or their agents repeatedly called Plaintiff's cell phone number 505-501-3610 with the same standardized, scripted sales pitch as part of Defendants' robodialing conspiracy described above.

25.     When Plaintiff answered their calls she was always greeted by the pre-recorded message or artificial voice which sought to interest her in "health insurance", which recording is also

described in the Exhibits to this Complaint.   It was always the same identical message in all the calls.

26.    Plaintiff attempted to use a call-blocking feature on her cell phone to block Defendants' robo-calls, but Defendants evaded this cell-phone feature by using numerous other phone numbers to send their robo-calls, so Plaintiff continued to be harassed by Defendants.

27.    All Defendants' calls to Plaintiff the subject of this Complaint were intentionally, knowingly made and initiated using a form of Caller ID spoofing that Subchapter E of the TCPA defines as a crime.   Plaintiff could never reach the caller back by returning a call to the Caller ID Defendants manipulated her phone to display.

28.    Defendants' pre-recorded message gave Plaintiff an option to press a number on her phone's keypad to be placed on a do-not-call list.   After Plaintiff's phone's call-blocking feature did not stop Defendants, Plaintiff repeatedly complied with the opt-out feature stated in Defendants' pre-recorded message but Defendants' calls did not stop.   Defendants' calls continued.

29.    Many of Defendants' calls Plaintiff did not answer, which resulted in Defendants' auto-dialers then repeatedly leaving this same, standardized, pre-recorded message on Plaintiff's phone's voice-mail:   ". . . . . *hassle-free to sign up.  We have pre-approvals ready in your area including Cigna, Blue Cross, Aetna, United and many more.  Press 1 to get a hassle-free assessment or press 2 to be placed on our do-not-call list.   Thanks for your time and be healthy and blessed*."   Plaintiff could not "press 2" to stop the calls when she received Defendants' standardized voice-mail message.

30.     On multiple occasions Plaintiff answered one of Defendants' calls with the pre-recorded message then waited for a live telemarketer to come on the line so she could make specific do-not-call requests to a real person.  This too never stopped the calls and usually resulted in the live telemarketer  just abruptly disconnecting the call.

31.     The sponsors of Defendants' telemarketing calls were never identified within 15 seconds of Plaintiff answering the calls, and were never identified within the pre-recorded voicemail messages left on Plaintiff's phone if she did not answer.   The pre-recorded voicemail messages were over 15 seconds long.

32.     Because Defendants' unlawful robo-calls continued, Plaintiff finally decided to listen to and comply with Defendants' scripted sales pitch.  Plaintiff did so solely for the purpose of trying to identify the parties who were responsible for repeatedly, illegally robo-calling her cell phone.

33.     On several occasions, Plaintiff bought the sham-product Defendants marketed as "health-insurance", to directly connect a Seller to the calls so she could demand the Seller make the calls stop.  These Sellers provided additional evidence that Smith and Shapiro controlled the calls to Plaintiff on Sellers' behalf, including the fact that when Sellers informed Smith and Shapiro about Plaintiff's complaints, Defendants' calls to Plaintiff finally stopped.

34.     Plaintiff never gave prior express written consent to receive telephone solicitations from Defendants and has never had any prior relationship with Defendants.

35.     Defendants' calls complained of herein aggravated and harrassed Plaintiff, wasted her time, invaded her privacy, disrupted her days, were an obnoxious nuisance and cost her electricity necessary to recharge her telephone.

36.     Defendants never subscribed to or complied with the Registry.

37.     Defendants never adopted or implemented policies or practices to comply with the TSR.

38.     Defendants did not train or supervise their agents for telemarketing compliance.

39.     Telemarketing to phone numbers listed on the Registry results in consumer complaints. Based on the numbers of consumer complaints to and about their telemarketers, Defendants had an actual awareness or should have had an actual awareness that their agents actually making or initiating telephone solicitations, including the calls to Plaintiff described above,  telephone people who object to the calls, to people who did not consent to them, and to people whose telephone numbers are listed on the  Registry.   Defendants also had an actual awareness or should have had an actual awareness that their robocalls were unlawful because they knew they were using lead-lists consisting of many many millions of phone numbers, so many phone numbers that they knew they were robodialing do-not-call registered phone numbers of consumers who had not given prior express written consent to be called.

40.     Smith and Shapiro prepared or specifically approved the pre-recorded message Spiller and Mears used in the calls to Plaintiff.

41.     Minimal oversight by Defendants would have confirmed for them that the telemarketing done on Defendants' behalf was done without complying with the Registry, the TCPA or  the TSR.

42.     Defendants gave and continued to give substantial assistance or support to their agents and each other while knowing, consciously avoiding knowing or being recklessly indifferent to the fact that they were all engaged in acts or practices that violated the UPA, the TCPA and the Telemarketing Sales Rule.

43.     Defendants used robocalling because it allows for thousands of automated sales calls to be initiated in a very short period of time, but their sales representatives only needed to actually spend

time on the phone with consumers who responded positively.  Defendants thereby illegally shifted the cost of aggravation and wasted time to the public at large and away from themselves where it belongs.

44.    Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was deliberate and volitional.

45.    Plaintiff's phone number referred to above that Defendants or their agents and co-conspirators repeatedly called, has at all relevant times been continuously listed on the  Registry.

46.    A direct connection exists between all Defendants herein and the calls complained of by Plaintiff because the calls were directly made on behalf of Defendants so they could all profit from a common enterprise in which they all substantially participated.

47.    Defendants are either directly responsible for the calls described above or they are vicariously liable for the calls complained of by Plaintiff herein because they:

    a)    authorized agents to initiate the phone calls;

    b)    directly or indirectly controlled the persons who actually made or initiated the calls;

    c)    allowed the telemarketers access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they  would not be able to sell using robocalling;

    d)    allowed the telemarketers to enter or provide consumer information into Defendants' sales or operational systems;

    e)    approved, wrote, reviewed or participated in developing the telemarketing sales scripts and messages;

f)        Defendants reasonably should have known or consciously avoided knowing that the actual callers and telemarketers were violating the law and Defendants failed to take effective steps within their power to require compliance;  OR

g)        Defendants gave substantial assistance or support to their agents and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that their co-conspirators were engaged in acts or practices that violated the TCPA, the UPA and/or the TSR.

48.      Defendants ratified the robocalls to Plaintiff described above because they accepted and intended the benefits to them of the calls while knowing or consciously avoiding knowing their telemarketer-agents were calling phone numbers listed on the Registry without complying with the Registry.


### FIRST  SET OF CLAIMS FOR RELIEF  -  UPA Violations

49.      Plaintiff hereby brings this action pursuant to the New Mexico Unfair Practices Act ("the UPA") to recover her statutory damages for each violation of the UPA and her attorney fees.  As set forth above Defendants' conduct was knowing and/or willful therefore Plaintiff is entitled to and should be awarded treble his statutory damages.

50.      The calls to Plaintiff described above each violated  NMSA §57-12-22(A)(1), §57-12-22(B)(1), §57-12-22(C)(1) and §57-12-22(C)(2):    4 violations of the statute within each call. Plaintiff should be awarded $300 for each separate or distinct violation of the statute because Defendants' violations were willful.

51.     Each call to Plaintiff from Defendants the subject of this matter was also an actionable unfair, unconscionable or deceptive trade practice because each call violated  § 310.4 of the Telemarketing Sales Rule.

52.     Defendants additionally distinctly violated the UPA because pursuant to 16 C.F.R. §310.3(b):   "It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule."

SECOND SET OF CLAIMS FOR RELIEF  -  Violations of the TCPA's Subsection B

53.     The foregoing acts and omissions of Defendants or their agents on their behalf constitute multiple violations of  47 U.S.C. § 227(b) and its implementing regulations.

54.     Each of Defendants' calls to Plaintiff were made with an automatic telephone dialing system ("auto-dialer"), and each call also used a pre-recorded message:  2 violations of the statute within each call.

55.     Plaintiff is entitled to and should be awarded against Defendants $500 in damages for each and every violation of the TCPA's Subsection B.  Because Defendants' conduct set forth above was knowing and/or willful Plaintiff should be awarded treble damages of up to $1,500 for each and every violation.

THIRD SET OF CLAIMS FOR RELIEF  -  Violations of the TCPA's Subsection C

56.     Defendants or Defendants' agents on Defendants' behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact her phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times.

11

57.     For each of Defendants' calls to Plaintiff the subject of this Complaint, Plaintiff should

recover up to an additional $1500 pursuant to 47 U.S.C. § 227(C).


        WHEREFORE, Plaintiff prays for entry of judgment for  -   her statutory, actual, nominal

and/or treble damages sufficient in size to set an example and deter in the future the conduct

complained of by Defendants or others.   Plaintiff prays for such other and  further relief as the

Court finds proper.   Plaintiff requests an award of her attorney fees and costs.


                                RESPECTFULLY  SUBMITTED,

                        By:    /s/  Sid  Childress
                               _____
                               Sid Childress, Lawyer
                               1925  Aspen  Dr.  #600A
                               Santa  Fe,  NM  87505
                               childresslaw@hotmail.com
                               (505) 433 - 9823
                               Attorney for Plaintiff