## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BARBARA MOHON,

      Plaintiff,

v.                                                                  No. 1:22-cv-00108-DHU-LF

JOHN C. SPILLER II,
JACOB A. MEARS,
MICHAEL THERON SMITH JR.,
SCOTT PERRY SHAPIRO, and
JAKOB ALEXANDER MEARS,

      Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

      This matter is before the Court Plaintiff Barbara Mohon's Motion for Default Judgment. Doc. 22. The Court, having considered the motion, exhibits, pleadings, declarations, relevant law, and being otherwise fully informed of the record, concludes that the motion will be GRANTED in part and DENIED in part.

### BACKGROUND

      The following well-pleaded facts are deemed admitted by Defendants and taken as true for purposes of this Order. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (stating that upon default, the defendant admits the plaintiff's allegations). Plaintiff brings this action in accordance with the anti-harassment provisions of the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-22 ("UPA") and under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). According to Plaintiff's Amended Complaint, Plaintiff's cell phone number has been continuously listed on the National Do-Not-Call Registry, which "allows people to list their telephone numbers and thereby indicate their instructions to not receive telephone solicitations." Am. Compl. ¶¶ 4, 45 (capitalization omitted). Despite placing her phone number on

the Registry, Defendants nevertheless sent "robocalls" to Plaintiff attempting to sell "services they falsely claimed were 'health insurance.'" *Id*. at ¶¶ 9, 24.

Defendants Spiller and Mears are Texas residents. *Id*. at ¶¶ 10. From at least June of 2018 through January 30, 2019, Spiller and Mears, through their business, "Rising Eagle," initiated abusive robocalls nationwide. *See* Doc. 1-2; Pl.'s Mot. at 10. As for Defendants Smith and Shapiro, both are Florida residents. Am. Compl. at ¶ 11. They too have initiated abusive robocalls through their business, "Health Advisors." *See* Doc. 1-2; Pl.'s Mot. at 10.

Plaintiff filed her original Complaint on February 16, 2022, and then filed her Amended Complaint four days later.[1] *See* Docs. 1, 5. Affidavits of service filed by Plaintiff show that service of the Amended Complaint was made on Defendants throughout 2022. *See* Docs. 6; 7; 8; 17. Plaintiff also filed declarations of non-military service which noted that, to the best of Plaintiff's knowledge, no Defendant was currently in military service or on active duty or some other deployment. *See* Docs. 11, 18.

Plaintiff then sought the Clerk's Entry of Default against each Defendant. *See* Docs. 10, 17. The Clerk entered default of each Defendant, noting that the Defendant had "failed to plead or otherwise defend" as provided by Federal Rule of Civil Procedure 55(a). Docs. 12, 20. Shortly after the Clerk entered default, Plaintiff filed the instant Motion for Default Judgment which is now before the Court. To date, no Defendant has entered an appearance in this case.

As for Defendant Smith, all of Plaintiff's claims against Smith have been stayed until Chapter 11 bankruptcy proceedings against him pending in the United States Bankruptcy Court for the Southern District of Florida have been resolved. *See* Doc. 25. Under 11 U.S.C. § 362(a), "a

---

[1] Plaintiff's Amended Complaint substituted "Jakob Alexander Mears" for "Jacob A. Mears" as a party-defendant.

petition filed under section 301, 302, or 303 of this title ... operates as a stay … of … the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). "This automatic stay is effective immediately upon filing without further action, and suspends any non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor." *Country Mut. Ins. Co. v. Raven*, No. 820CV1451BKSDJS, 2021 WL 6106431, at *1 (N.D.N.Y. Apr. 7, 2021) (citation and quotation marks omitted). Because the scope of a bankruptcy stay includes "the initiation of any steps, such as recording a notice of default, that would lead to foreclosure of property of the debtor's estate," the Court does not adjudicate or decide Defendant Smith's alleged liability. *In re Cap. Mortg. & Loan, Inc.*, 35 B.R. 967, 971 (Bankr. E.D. Cal. 1983). Nor does the Court enter any default judgment against Smith.[2] *Country Mut. Ins.*, No. 2021 WL 6106431, at *1 (N.D.N.Y. Apr. 7, 2021) ("the automatic stay effective upon Defendant's filing of a bankruptcy petition bars this Court from adjudicating Plaintiff's pending motion for default judgment at this time.")

## DISCUSSION

"When a defendant fails to answer or otherwise defend against an action, Rule 55 of the Federal Rules of Civil Procedure provides two distinct sequential steps: the entry of default and the entry of default judgment." *Plumbers & Pipefitter Nat'l Pension Fund v. CYLX Corp.*, No. 19-CV-113-JFH-JFJ, 2021 WL 6053686, at *1 (N.D. Okla. Apr. 19, 2021) (citing Fed. R. Civ. P. 55(a), (b); *see also Guttman v. Silverberg*, 167 Fed. App'x. 1, 2 n. 1 (10th Cir. 2005) (unpublished) ("The entry of default and the entry of a judgment by default are two separate procedures."). "First, a party must obtain a Clerk's entry of default." *Branch v. Att'y for You*, No. 1:15-CV-01087-RAJ, 2016 WL 7438410, at *2 (D.N.M. June 7, 2016). After default has been entered, the party may

---

[2] The Court's use of the term "Defendants" specifically excludes Defendant Smith.

seek default judgment. *See Garrett v. Seymour*, 217 Fed. App'x. 835, 838 (10th Cir. 2007) (unpublished).

The Court finds that Plaintiff has obtained the Clerk's entry of default against each Defendant. As stated earlier in this Order, the Clerk entered default of each Defendant under Rule 55(a), noting that the Defendants had "failed to plead or otherwise defend." Docs. 12, 20. Entries of default are therefore on the record, and the Court finds that the Clerk's entry is well supported because Defendants have failed to participate in this case even though affidavits of service show that Defendants were served with the Amended Complaint.

The Court next analyzes the merits of Plaintiff's request for default judgment. "[B]efore entering a default judgment, a court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1309 (10th Cir. 1994). This involves an analysis of "whether [the court] has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment, and whether the amount of damages can be ascertained." *Plumbers & Pipefitter Nat'l Pension Fund*, 2021 WL 6053686, at *1; *see also Viacom Int'l Inc. v. Baca*, No. CV 18-112 JCH/KRS, 2018 WL 6003539, at *1 (D.N.M. Nov. 15, 2018) ("In ruling on a motion for default judgment, courts should consider (1) jurisdiction, (2) liability, and (3) entitlement to the relief requested.").

**1. Jurisdiction**

Starting with jurisdiction, this case involves claims under both federal law (the TCPA) and state law (the UPA) so jurisdiction rests on a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. To determine whether a court may exercise jurisdiction over a defendant in a federal question case, the court must examine (1) whether the federal statute confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of

jurisdiction would violate due process. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210-11 (10th Cir. 2000). "[T]he TCPA does not address service of process," so the Court turns to New Mexico's long-arm statute. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1220 (10th Cir. 2021).

New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible. *See Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 132 N.M. 312, 316, 48 P.3d 50, 54 (N.M. 2002). "Consequently, the [Court] need not conduct a statutory analysis apart from the due process analysis." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011). The due process analysis "requires that the out-of-state defendant both 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with 'fair play and substantial justice.''" *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322–23 (10th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). The minimum contacts requirement may be satisfied in two ways, through general or specific jurisdiction. *See Trujillo v. Williams*, 465 F.3d 1210, 1218 & n.7 (10th Cir. 2006). Plaintiff does not allege, and the record does not show, that Defendants are essentially "at home" in New Mexico to support general jurisdiction as Defendants are residents of states other than New Mexico. *C5 Med. Werks*, 937 F.3d at 1323.

Accordingly, the Court examines whether it has specific jurisdiction over Defendants. "Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted). "[I]n the context of the TCPA, … courts have held that personal jurisdiction is proper in the District where an unlawful

communication is received." *Mey v. Castle L. Grp., PC*, 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019); *Payton v. Kale Realty, L.L.C.*, No. 13 C 8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) ("[C]ourts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant.") Consistent with these holdings, the Court finds that calling Defendants' calling of Plaintiff's telephone in New Mexico "almost daily" from June 2018 and "well into 2019" as alleged in the Amended Complaint demonstrates that Defendants purposefully availed themselves of the privilege of conducting business in the State of New Mexico. *See Hood*, 21 F.4th at 1224-26 (out-of-state telemarketer's calls to Colorado consumers to sell service contracts supported specific jurisdiction). Accordingly, the Court determines that it has jurisdiction over the subject matter and the parties.

### 2. Liability

Having determined that the Court has jurisdiction, "the [C]ourt next must determine whether the well-pled allegations of the complaint, if true, state a claim for relief." *Nevada Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 693 (D.N.M. 2018) (citation omitted). Even though a defaulted defendant is deemed to admit the well-pleaded facts, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). With this framework in mind, the Court will next analyze whether Plaintiff's allegations establish claims for relief under and the federal TCPA and New Mexico's UPA.

The Court begins with Plaintiff's federal TCPA claims, Counts 2 and 3. Count 2 is brought under Section 227(b) of the TCPA while Count 3 asserts Section 227(c) violations. The TCPA protects consumers from "nuisance and privacy invasion" by prohibiting "almost all robocalls to cell phones." *Hood*, 21 F.4th at 1220 (citation omitted). As relevant here, an aggrieved party may

bring a private right of action for a violation of Section 227(b) of the TCPA, which "forbids autodialed calls to a cellular phone without prior consent of the called party," or under Section 227(c), which "prohibits calls to any subscriber on the do-not-call registry." *Nelums v. Mandu Wellness*, *LLC*, No. CV 2:22-828 KRS/GBW, 2023 WL 5607594, at *7 (D.N.M. Aug. 30, 2023) (citing 47 U.S.C. §§ 227(b)(1), (c)(3)(F)).

"To state a claim under Section 227(b), a plaintiff must allege that (1) the defendant made a telephone call (2) to the plaintiff's cellular phone (3) using any automated telephone dialing system or an artificial or prerecorded voice." *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1022 (D.N.M. 2020) (quoting 47 U.S.C. § 277(b)(1)(A)(iii)). Concerning the first element, a seller of a product "is only directly liable when it places the call" because "[t]here is clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf." *Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 510 (D. Md. 2015) (citation and footnote omitted). "However, a seller cannot avoid liability simply by delegating placing the call to a third-party." *Id.* "[W]hile a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [….] section 227(b) ... that are committed by third-party telemarketers." *Id.* (citation omitted). "This includes a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* (footnote omitted). Here, the Amended Complaint sufficiently pleads that Defendants are directly or vicariously liable. The Amended Complaint states that "Defendants are either directly responsible for the calls described … or they are vicariously liable for the calls complained of … because they" authorized agents to initiate calls or controlled the persons who initiated the calls. Am. Compl. at ¶ 47. Thus, Plaintiff's allegations satisfy the first element.

Plaintiff's allegations also satisfy the second element. *See Mestas*, 508 F. Supp. 3d at 1022. The Amended Complaint repeatedly alleges—and Defendants admit by defaulting—that the calls were to Plaintiff's cell phone number and that she was "charged for the calls, which satisfies the … require[ment] that the call be made 'to any telephone number assigned to [...] cellular telephone service [...] for which the called party is charged for the call.'" *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). The second element is therefore satisfied.

The third element requires Plaintiff to prove that Defendants used any automated telephone dialing system or an artificial or prerecorded voice. *Mestas*, 508 F. Supp. 3d at 1022. Plaintiff's allegations satisfy this element. She has alleged that that she was always "greeted by the pre-recorded artificial voice which sought to interest her in 'health care'" and that "it was always the same identical message in all the calls." Am. Compl. at ¶ 25. In summary, the Court concludes that Plaintiff has established liability for her Section 227(b) claim of the TCPA.

The Court next examines Count 3, Plaintiff's Section 227(c) claim. That provision "allows a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations." *Mestas*, 508 F. Supp. 3d at 1027 (quoting 47 U.S.C. § 227(c)(5)). Plaintiff alleges, and Defendants admit, that they or their agents "made telephone solicitations to Plaintiff more than once within 12 months despite the fact [Plaintiff's] phone number … has been continuously listed on the Registry at all relevant times. Am. Compl. at ¶ 56. In *Mestas*, this Court denied a Rule 12(b)(6) motion to dismiss a complaint asserting virtually the same allegations. *See* 508 F. Supp. 3d at 1027–29 (denying motion to dismiss complaint alleging that the "Defendants or Defendants' agents on Defendants' behalf made telephone solicitations to Plaintiff more than once within 12 months

8

despite the fact his phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times.") Given Defendants' admission that they or their agents made telephone solicitations to Plaintiff's phone number more than once within 12 months even though Plaintiff's number was placed on the Do-Not-Call list, the Court concludes that Plaintiff has successfully established a Section 227(c) claim.

Finally, the Court turns to Count 1, Plaintiff's state-law UPA claim. Plaintiff alleges four distinct UPA violations. First, Plaintiff assertions a violation of Section 57-12-22(A), which prohibits "utiliz[ing] an automated telephone dialing or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons …." N.M. Stat. Ann. § 57-12-22(A). Second, Plaintiff asserts a violation of Section 57-12-22(B)(1), which prohibits a person from "mak[ing] a telephone solicitation for a purchase of goods or services" "without disclosing within fifteen seconds of the time the person being called answers the name of the sponsor and the primary purpose of the contact." N.M. Stat. Ann. § 57-12-22(B)(1). And finally, Plaintiff asserts two violations of Section 57-12-22(C) which makes it unlawful to "make a telephone solicitation of a residential subscriber whose telephone number has been on the national do-not-call registry, established by the federal trade commission, for at least three months prior to the date the call is made" or "use a method to block or otherwise intentionally circumvent a residential subscriber's use of a caller identification service pursuant to the Consumer No-Call Act. N.M. Stat. Ann. § 57-12-22(C)(1), (C)(2).

As with Plaintiff's TCPA claims, Plaintiff alleges that Defendants or their agents made telephone solicitations to Plaintiff using a prerecorded message even though her phone number was listed on the Registry. The telemarking calls did not identify the caller "within 15 seconds of

Plaintiff answering the calls, and [the sponsors] were never identified within the pre-recorded voicemail messages" left on Plaintiff's phone. Am. Compl. ¶ 31. Plaintiff also alleges that she tried to use a "call-blocking" feature on her phone but that Defendants "evaded this feature." *Id*. at ¶ 31. By defaulting, Defendant has admitted to each of these facts. The Court concludes that Plaintiff's allegations establish legitimate UPA claims.

### 3. Relief

The Court next turns to the issue of Plaintiff's requested relief. "[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). Judgment can be entered for a "sum certain." Fed. R. Civ. P. 55(b)(1). "To be a 'sum certain' there must be no doubt as to the amount that must be awarded." *Mohon v. Nat'l Cong. of Emps., Inc.*, No. 119CV00652KWRJHR, 2021 WL 601816, at *2 (D.N.M. Feb. 16, 2021) (citation omitted). "[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter–Globe Energy, Inc.,* 770 F.2d 145, 148 (10th Cir. 1985). "A court is not required to accept the plaintiff's legal conclusions or factual allegations when assessing damages and must ensure that there is a legal basis for the damages specified in the default judgment." *Mohon*, 2021 WL 601816, at *2 (citing *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949)).

Plaintiff alleges 200 violations of subsection B of the TCPA, 200 violations of subsection C of the TCPA, and 400 violations of the New Mexico UPA. She seeks a total of $240,000 in statutory damages, trebled to $570,000.

Starting with Plaintiff's federal claims, Plaintiff alleges 200 violations of subsection B of the TCPA, consisting of 100 auto-dialer calls plus 100 uses of an artificial or prerecord voices

directed to Plaintiff's cell phone. The Court finds that Plaintiff's request is well-supported. Subsection B of the TCPA makes it illegal "to make any call … using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service". 47 U.S.C. § 227(b)(1)(A). The statute allows $500 in damages for each "violation of this subsection." *Id.* § 227(b)(3). And, as relevant here, a plaintiff can recover for violations of a telemarketer's use of auto-dialer calls and use of a prerecorded voices. *See Mohon*, 2021 WL 601816, at *2. The Court therefore concludes that Plaintiff is entitled to $500 per statutory violation for a total of $100,000 for subsection B violations.

Next, Plaintiff seeks statutory damages for 200 violations of subsection C of the TCPA. Section 227(c)(5) codifies a separate right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection …."  47 U.S.C. § 227(c)(5). Subsection C also expressly provides $500 for each violation. *See id.* at § 227(c)(5)(B). "Subsection C or 'do-not-call' damages are awarded on a 'per call' basis only." *Mohon*, at *3. Because Defendants dialed Plaintiff at least 100 times despite her number being on the Registry, Plaintiff is awarded $50,000 in statutory damages for 100 subsection C violations.[3]

Turning to Plaintiff's state-law claims, she has alleged 400 violations of the UPA. This consists of 100 violations of N.M. Stat. Ann. § 57-12-22(A), 100 violations of N.M. Stat. Ann. § 57-12-22(B)(1), 100 violations of N.M. Stat. Ann. § 57-12-22(C)(1) and 100 violations of N.M.

---

[3] The Court does not address Plaintiff's argument that she is entitled to damages for 100 other distinct subsection C violations. This is because awarding Plaintiff such damages would result in her receiving more damages than she sought, which Plaintiff acknowledges. *See* Pl.'s Mot. at 21 (plaintiff stating that her complaint "limits Plaintiff's Subsection C claim to a maximum of $150,000" and that a "Default Judgment cannot award a plaintiff more than the plaintiff's pleadings sought.") In any case, because the Court trebles damages, the Court does in fact award Plaintiff $150,000 in subsection C damages, which is what Plaintiff ultimately seeks.

Stat. Ann. § 57-12-22(C)(2). Plaintiff seeks $100 per violation for a total of $40,000 in damages under the UPA. Plaintiff's request is well-supported. The UPA provides that "[a]ny person who suffers any loss of money or property, real or personal, as a result of any … act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater."  N.M. Stat. Ann. § 57-12-10(B). Plaintiff therefore is entitled to $40,000 in statutory damages under the UPA.

Finally, Plaintiff's asks the Court to treble damages for a total award of $570,000. The TCPA allows treble damages up to $1,500 for each violation that is committed "willfully or knowingly." *Ace Am. Ins. Co. v. Dish Network, LLC*, 883 F.3d 881, 885 (10th Cir. 2018). The UPA also allows treble damages "up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice," if the court finds that a defendant has "willfully engaged in the [complained of] trade practice." N.M. Stat. Ann. § 57-12-10(B).

The Court concludes that Plaintiff is entitled to trebled damages. "The requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute." *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015). By defaulting, Defendants admit that "Smith and Shapiro regularly supplied Spiller and Mears with 'lead-lists'" of phone numbers that "Smith and Shapiro knew … [were] do-not-call registered phone numbers of consumers who had not given prior express written consent" to be called. Am. Compl. at ¶ 16. In addition, Plaintiff submitted objective evidence—a Federal Communications Commission ("FCC") forfeiture order and a lawsuit by several Attorneys General—that confirms the thrust of Plaintiff's allegations. The FCC imposed record fines against Spiller, Mears, and their company Rising Eagle for "robocalls includ[ing] false or misleading statements" and discussed how spoof calls would be routed to Smith and Shapiro's business,

Health Advisors of America, Inc. Doc. 1-1, 3. Similarly, the Attorneys' General lawsuit alleged that Smith and Shapiro, through Health Advisors, "contracted with Rising Eagle … for Rising Eagle … to supply Health Advisors with leads." Doc. 1-1, 41. These allegations, among many others, are sufficient to conclude that Defendants knew they were performing conduct that violated the TCPA and the UPA.

## CONCLUSION

1.      For the reasons stated herein, Plaintiff Barbara Mohon's Motion for Default Judgment (Doc. 22) is GRANTED as to Defendants John C. Spiller II, Scott P. Shapiro, and Jakob A. Mears, but DENIED without prejudice as to Michael T. Smith Jr.

2.      Plaintiff is entitled to $570,000 in damages apportioned jointly and severally against Defendants John C. Spiller II, Scott P. Shapiro, and Jakob A. Mears.

3.      Plaintiff shall take no actions that are inconsistent with the bankruptcy stay against Defendant Michael T. Smith Jr.

IT IS SO ORDERED.

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE